**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Eugenia McDonnell,<br><br>  Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>  Defendant. | No. CV-14-01707-PHX-NVW<br><br>**ORDER** |

Plaintiff Laura Eugenia McDonnell seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

Plaintiff alleges both physical and mental impairments. She was born in November 1985, graduated from high school, and completed three years of college. She withdrew from most of her classes during her fourth year because she developed postural orthostatic tachycardia syndrome (a condition that causes an abnormally large increase in heart rate upon standing up from a lying down position, which often results in lightheadedness and fainting). She has been taking Wellbutrin for depression since she

was in high school, and she was diagnosed with Asperger's syndrome while in high school.

Although Plaintiff did not complete her intended course load for a double major in English and statistics, she was able to receive a B.A. degree in English. In 2009-2010, she worked part-time for a business that produced a free directory of resources for seniors and disabled individuals. She received commissions for assisting with the sale of advertising.

On March 7, 2012, Plaintiff applied for supplemental security income, alleging disability beginning August 1, 2006. On December 30, 2013, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On February 7, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On July 29, 2014, Plaintiff sought review by this Court.

## II.    STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence

is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 7, 2012, the application date. At step two, the ALJ found that Plaintiff has the following severe impairments: postural orthostatic tachycardia syndrome ("POTS"), depression, Asperger's syndrome, and chronic fatigue syndrome. At step three, the ALJ determined that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she is limited to unskilled work in a non-public setting involving simple, routine, and repetitive tasks that are no more than three steps; she cannot perform fast-paced work such as assembly line type work; she is limited to occasional postural activities with no climbing of ladders, ropes, or scaffolds; and she should avoid exposure to hazards.

The ALJ further found that Plaintiff has no past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as garment sorter, packager, and inspector/hand packager.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of

the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 2. Treating Physician Daniel Bradford, M.D.

Plaintiff first saw Dr. Bradford on July 1, 2013, and her chief complaint was chronic fatigue. Dr. Bradford noted "no dizziness, no fainting, and no vertigo." Plaintiff saw Dr. Bradford on August 8 and September 16, 2013, for a gynecological problem. On September 24, 2013, Plaintiff saw Dr. Bradford to fill out disability forms. Dr. Bradford noted that he "sat with patient for 15 min to fill out forms," during which he completed an Impairment Questionnaire. Dr. Bradford reported Plaintiff's primary symptoms as depression and fatigue and said she has continuous headache and chronic muscle pain in

1    her back, arms, and leg.  He said that physical therapy did not affect her pain and she
2    cannot afford psychological counseling.  He opined that Plaintiff can perform a job in a
3    seated position for two hours and standing/walking for one hour in an 8-hour workday.
4    He said it was medically necessary for Plaintiff to get up from a seated position to move
5    around every two hours.  Dr. Bradford said Plaintiff could frequently carry/lift up to 10
6    pounds and occasionally lift up to 20 pounds.  He opined that Plaintiff has significant
7    limitations on both right and left upper extremities in reaching, handling, and fingering,
8    and she can never or rarely grasp, turn, and twist objects; use hands/fingers for fine
9    manipulations; or use arms for reaching.  Dr. Bradford opined that Plaintiff is likely to be
10   absent from work as a result of her impairments more than three times a month on
11   average.

12   For clinical and laboratory findings in support of his September 24, 2013 opinion,
13   Dr. Bradford wrote two words: "tilt test."  The record does not include the results of a tilt
14   table test before September 2013, but the Tilt Table Test Report attached to Dr.
15   Bradford's opinion describes the results of a procedure performed on December 9, 2013,
16   more than two months after Dr. Bradford wrote his opinion.  During the test, Plaintiff's
17   heart rate increased, and she displayed flushing, dizziness, chest pressure, and tingling.
18   Results of the test were "suggestive of postural orthostatic tachycardia."

19   The ALJ stated that he gave little weight to Dr. Bradford's opinion because it was
20   not supported by the objective medical evidence or the record as a whole, which showed
21   she received limited treatment for her alleged physical impairments, the limited physical
22   examination findings during this period were generally unremarkable, and the exertional
23   and manipulative limitations opined by Dr. Bradford were not supported by any
24   diagnostic, physical, or clinical findings.  According to Dr. Bradford's treatment notes,
25   Plaintiff did not report postural orthostatic tachycardia, and she reported no generalized
26   pain, no dizziness, no fainting, and no vertigo.  Even during the administrative hearing,
27   Plaintiff did not mention any difficulty using her hands or arms.  The ALJ expressly
28   considered Plaintiff's "ongoing clinical presentation, type of and response to treatment,

daily activities, frequency of treatment, alleged symptoms and limitations, and the objective evidence" before concluding that Dr. Bradford's opinion imposed too restrictive limitations that were not supported by the objective medical evidence or the record as a whole.

Thus, the ALJ provided clear, convincing, specific, and legitimate reasons for giving little weight to Dr. Bradford's opinion regarding severe functional limitations.

### 3. Examining Psychologist Patricia Masuda-Story, Psy.D.

On December 16, 2013, Dr. Masuda-Story performed an extensive psychological Independent Medical Evaluation of Plaintiff. On December 26, 2013, Dr. Masuda-Story prepared a 22-page narrative report and completed a Mental Impairment Questionnaire. The report quoted Plaintiff's statements to Dr. Masuda-Story at length, but also included detailed descriptions of Dr. Masuda-Story's observations, clinical findings, diagnoses, and treatment recommendations. Dr. Masuda-Story diagnosed Plaintiff with Asperger's Disorder and Mood Disorder Due to General Medical Conditions. She explicitly did not diagnose Plaintiff with Major Depressive Disorder or any specific anxiety disorder because Plaintiff did not meet full criteria for those disorders. She opined that Plaintiff's symptoms of depression and anxiety are secondary to Asperger's syndrome, postural orthostatic tachycardia syndrome, and chronic fatigue syndrome. She recommended psychiatric medication management by a psychiatrist, cognitive behavioral therapy with a licensed clinical psychologist, and group psychotherapy for social reintegration and family support.

Dr. Masuda-Story assessed marked limitations in Plaintiff's ability to sustain ordinary routine without supervision, work in coordination with or near others without being distracted by them, complete a workday without interruptions from psychological symptoms, perform at a consistent pace without rest periods of unreasonable length or frequency, and get along with coworkers or peers without distracting them. She assessed moderate to marked limitations in Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently

be punctual, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and respond to workplace changes. Regarding additional mental activities, Dr. Masuda-Story assessed moderate or less limitation. She opined that Plaintiff is likely to be absent from work as a result of her impairments more than three times a month.

The ALJ stated that he gave some weight to Dr. Masuda-Story's opinion because she personally observed and examined Plaintiff, and the positive objective clinical findings in the medical evidence are from her examination. The ALJ gave greater weight to Dr. Masuda-Story's findings than he did to those of consultative examiner Dr. Reynaldo Abejuela, who is Board certified in psychiatry and neurology. Dr. Abejuela diagnosed Plaintiff as having mild depression and mild anxiety. He assessed Plaintiff's impairments as none to mild and opined that Plaintiff's psychiatric prognosis is fair to good. The ALJ gave only limited weight to Dr. Abejuela's opinion and found functional limitations due to Asperger's syndrome and depression primarily based on Plaintiff's testimony and Dr. Masuda-Story's assessment.

Although Plaintiff received limited mental health treatment during the relevant period and Dr. Masuda-Story did not treat Plaintiff, the ALJ relied substantially on Dr. Masuda-Story's findings for Plaintiff's mental residual functional capacity assessment. Viewing the evidence in the light most favorable to Plaintiff, the ALJ found Plaintiff capable of only unskilled, nonpublic, simple, routine, and repetitive tasks of no more than three steps with no fast-paced work. Substantial evidence supports the ALJ's conclusion that his mental residual functional capacity assessment adequately addressed Dr. Masuda-Story's findings as well as Plaintiff's allegations. There were no treatment records from a mental health provider for the ALJ to consider other than two medication management progress notes from 2011. He was not required to provide further reasons for not giving greater weight to Dr. Masuda-Story's opinion because the opinion was not supported by substantial evidence.

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted).  But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Id.*  The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

Plaintiff alleged spending 22 hours a day lying down, mostly reading, and sleeping eight or nine hours per night.  She alleged that sitting up makes her head feel cloudy, standing is difficult, but sometimes walking around makes her feel better.  She alleged that she has difficulty with concentration, memory, alertness, multi-tasking, and social interactions.

The ALJ identified inconsistencies between the degree of limitations Plaintiff claimed and her reports of daily activities, such as cooking at least one meal daily, going for walks to the store or at the shopping mall, doing some household cleaning, socializing with friends, and traveling to Costa Rica with her family.  The ALJ also identified inconsistencies between the degree of limitations Plaintiff claimed and the objective medical evidence or the record as a whole, such as relatively infrequent visits to a medical provider for the allegedly disabling symptoms.  The ALJ found Plaintiff had a limited medical treatment history related to chronic fatigue syndrome and postural orthostatic tachycardia syndrome, and treatment was limited to prescribed medication, exercises, and compression clothing.  The ALJ further found that Plaintiff did not receive treatment from a mental health specialist during the relevant period, and treatment for alleged mental impairments was provided by a general practitioner.  Although she was prescribed medication for depression, she had not received psychiatric treatment during the relevant period.

Thus, the ALJ's decision is sufficiently detailed to show he did not arbitrarily discredit Plaintiff's testimony.  Substantial evidence supports finding that the ALJ provided specific, clear, and convincing reasons for concluding that Plaintiff is not a fully reliable source of evidence regarding the extent of her limitations.[1]

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 17th day of April, 2015.

_____
Neil V. Wake
United States District Judge

---

[1] Both counsel are commended for very well-written briefs.

- 10 -